UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

      -versus-                    **Docket # 2:21-CR-00150**

DAMON RALLIS,

                               **Before: Hon. Joan Marie Azrack**

          Defendant.
-------------------------------------------------------X

### DEFENDANT'S SENTENCING MEMORANDUM

1.  Jason L. Russo, Esq., an attorney duly admitted to practice law in the United States District Court for the Eastern District of New York hereby respectfully submits this Memorandum on behalf of the Defendant, Damon Rallis. The following exhibits are attached hereto and incorporated by reference:

> **Exhibit A** –Mental Health Treatment Notes of Dr. Richard Dackow
>
> **Exhibit B** – Letter of Reverand Roger Joslin
>
> **Exhibit C –** Letters of recommendation
>
> **Exhibit D –** The Effects of Aging on Recidivism Among Federal Offenders (United States Sentencing Commission Report December 2017)
>
> **Exhibit E** - Federal Sentencing of Child Pornography Non-Production Offenses (United States Sentencing Commission June 2021)

2.  For the reasons that follow, the defense respectfully requests that this Court

> (A)  Impose a sentence that is a variance from the applicable Guideline range and impose the minimum custodial sentence permissible by statute; or in the alternative,
>
> (B) Downwardly depart from applicable Guideline range and impose a minimal custodial sentence;
>
> (C)  impose no fine or financial penalty at sentence, due to Defendant's inability to pay such a fine;

(D) direct the Attorney General to place the Defendant in a within the Bureau of Prisons at a location as geographically close as possible to Suffolk County, New York to permit the Defendant's family and friends to visit him without undue burden or hardship;

(E) grant such other and further relief that this Court may deem just and proper.

## I. STATUTORY FACTORS FOR THE COURT TO CONSIDER

3.   18 U.S.C. § 3553(a) sets forth factors for the Court to consider in imposing sentence.  An application of these factors to the facts of the instant case is provided as follows.

> *1.   Nature and Circumstances of the Offense and the History and Characteristics of the Defendant*

4.   The United States Supreme Court has held that

> [a] sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. **Highly relevant - if not essential - to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics**.

Williams v. New York, 337 U.S. 241, 247 (1949) (emphasis added).

### a. Family History

5. Defendant's family history is set forth in Paragraphs # 49-65.  However, several items from the PSR stand out.  Of particular note is Paragraph # 56 notes that Defendant's paternal grandfather sexually abused Defendant's father as a child, and the grandfather later committed suicide.  Paragraph # 49 reveals that Defendant's father has a criminal record of sexual contact with a minor.  Paragraph # 50 also notes Defendant's father taking inappropriate pictures of his half-sister as a child.  Paragraph # 54 also details sexual abuse that Defendant suffered as a child from his aunt.  The sexual abuse Defendant experienced as a child is also detailed further in the extensive treatment notes of Dr. Richard Dackow and summarized below.

6. Dr. Dackow notes in his treatment records that Defendant was sexualized at a young age.  A psycho-sexual history indicates that Defendant "grew up in an ultra liberal environment which normalized behaviors which [Defendant] came to see as an adult as being aberrant. Family nudity and touching extended to his aunt whom he later realized

was sexually abusive." (Exhibit A, p. 3). Defendant was sexually abused by his aunt who touched him inappropriately and photographed him and his adult uncle wrestling in their underwear, and photographed Defendant nude at the age of 11. (Exhibit A, p. 6). Rather than discourage or correct this behavior, his custodial grandmother actively encouraged it and normalized it. Id. This led to behavioral problems with other children, voyeurism, and a fixation on pornography which developed into an addiction. (Exhibit A, pp 3, 6).

7. Also worth noting is that in spite of the nature of the charges, Defendant continues to enjoy the support of his mother, his wife, and to a certain degree, his children. His family and several friends have stood by him, as detailed below.

## b. Medical History

8. Defendant's mother is an alcoholic who abandoned him as a child to the care of his grandparents and aunt. Defendant's father was discharged from the United States Army for drug use.

9. Defendant himself regularly abused alcohol and marijuana throughout his life, starting at an early age, as detailed in Paragraphs # 74-77. He also experimented with a variety of other drugs. His substance abuse interfered with his education and likely contributed to the offense conduct. Defendant is now sober.

10. During the pendency of this case, he was diagnosed with Generalized Anxiety Disorder and Histrionic Personality Disorder with dependent and obsessive-compulsive traits. As confirmed by Pre-Trial Services and Probation, he underwent various treatment protocols to address his mental condition and the circumstances that gave rise to the offense conduct, including (a) regular treatment sessions with Dr. Richard Dackow, a psychologist[1] (b) regular mental health treatment sessions with First Light, and (c) participation in a 12-Step treatment program for both substance abuse and compulsive sexual behavior.

## c. Employment/Educational History

11. Defendant graduated from Franklin Pierce University with a B.A. in Mass Communication/Print Media in 1996. After college, Defendant worked as a journalist for several years for a newspaper. In 2001, he obtained employment with the Town of Southold as a Building Plans/Permit Examiner, which provided him with a stable income. He lost his job as a result of the instant arrest.

12. Since his dismissal, Defendant has attempted to find employment and has performed freelance work to stay busy and earn income. He has also been supported financially by his wife, who is gainfully employed.

## d. Offense Conduct

---

[1] Dr. Dackow passed away during the pendency of this case but his treatment records are attached.

13. The offense conduct is adequately and accurately detailed in the Pre-Sentence Report in Paragraphs # 4-22.

*2. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

14. The offense of conviction is a Class C felony, punishable by a mandatory minimum of 5 years imprisonment and a maximum of 20 years imprisonment. By requiring a mandatory minimum sentence, Congress has necessarily made the determination that these types of offenses are serious enough to require incarceration.  This has eliminated the need for a District Court to pronounce a discretionary sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

15. At the same time, this Court should consider the fact Defendant's 20-year career has effectively ended with his arrest, and that this case has negatively impacted his family's emotional and financial health as a result.

16. The penalogical goals set forth above would be satisfied with a mandatory 5-year custodial sentence.

*3.  The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct*

17. General or indirect deterrence focuses on general prevention of crime by making examples of specific offenders.  The individual defendant is not the focus of the attempt at behavioral change, but rather receives punishment in public view in order to deter other individuals from future criminal conduct.

18. It has been argued that specific deterrence is ineffective at achieving its ultimate goal. Critics of specific deterrence argue that offenders do not pause to consider the possible punishment for a crime they are about to commit, especially in the heat of the moment, and when drugs or alcohol are involved to handicap one's judgment. Some suggest that potential offenders are more likely to be deterred by the threat of being caught rather than the threat of punishment, citing an example of the crime rate falling dramatically in areas where closed-circuit television surveillance systems were introduced.

19. General deterrence has also been heavily criticized for relying on publicity of heavy punishments; it has been described as "the least effective and least fair principle of sentencing."  Martin, Jacqueline (2005). The English Legal System (4th ed.), p. 176. London: Hodder Arnold. ISBN 0-340-89991-3.

20. Regardless of the viewpoint, imposing any of the alternative sentences proposed by the defense in this particular case is sufficient to achieve that penological goal and deter other wrongdoers from engaging in similar conduct.

21.   Given Damon Rallis's medical situation and his family situation outlined above, the mandatory minimum sentence will be more than sufficient to deter him and others similarly situation from engaging in similar criminal conduct.

22. Having been placed on strict restrictions of home confinement and close monitoring by Pre-Trial Services, the Defendant is acutely aware of the requirements of supervision, and that a violation of supervised release can easily result in a custodial sentence, which would have a further devastating impact on his and his family's well-being.  This factor alone should be sufficient to specifically deter him from any future illegal conduct.

23. Due to the unique set of circumstances in this case, a mandatory minimum sentence more than satisfies the need for deterrence.

*4. The Need for the Sentence Imposed to*
*Protect the Public from Further Crimes of the Defendant*

24.  In December, 2017, the United States Sentencing Commission released a report entitled "The Effects of Aging on Recidivism Among Federal Offenders." (**Exhibit D).** In this report, the Commission concluded that the risk of recidivism is tied directly to age, race, level of education, and length of sentence.  The data relied upon by the Commission establishes that the risk of recidivism declines steadily with age; the higher the level of education, the lower the risk of recidivism; the shorter the sentence, the lower the risk of recidivism.

25. All of the factors relied upon by the Commission are also present here.  Based upon all of the facts at this Court's disposal, it is clear that there is no need to protect the public from any future crimes of Damon Rallis.  He is 50 years of age, in recovery, and will be approximately 55 years old when released from custody.  The risk of recidivism is extremely low, and thus, there is no need for a custodial sentence to protect the public.

*5. The Need for the Sentence Imposed to Provide the Defendant with*
*Needed Education or Vocational Training, Medical Care,*
*or other Correctional Treatment in the Most Effective Manner*

26. It is virtually guaranteed that the Bureau of Prisons and the Department of Probation will provide Defendant with some level of treatment for substance abuse and compulsive sexual behavior.  It is also virtually guaranteed that he will likely have to receive some educational vocational training to pursue a new career.

27. However, due to the Defendant's educational and employment history, and his track record over the last four years during the pendency of this case, the need for a lengthy sentence to address these needs is greatly diminished.

28. For these reasons, a minimum sentence would provide the Defendant with the most effective treatment in the most effective manner.

*6. The Kinds of Sentences Available*

29. The legally permissible sentences are a mandatory minimum of 5 years imprisonment, with a maximum of 20 years imprisonment, a $250,000 fine, and a minimum of 5 years of Supervised Release with a maximum of life. Defendant will also be required to register as a sex offender, and will face a number of additional restrictions as a result thereof.

30. Additionally, as noted by Probation, there will be a number of special conditions of Supervised Release. Finally, there are direct and collateral financial penalties.

### III. NON-STATUTORY MITIGATING FACTORS

31. The defense has identified a number of mitigating factors for this Court to consider in sentencing the Defendant, as detailed below.

*A. Acceptance of Responsibility*

32. Sentencing Guideline 3E1.1 and the Application Note 3 thereto is clear that

Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under §1B1.3 (Relevant Conduct) (see Application Note 1(a)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a).

33. Damon Rallis cooperated with the authorities at the time of his arrest and fully admitted his culpability. He then continued his acceptance of responsibility by not only adhering to all conditions of his pre-trial home confinement, but by pleading guilty early in this case, and certainly before any trial date was set by the Court, sparing the Government the trouble and expense of preparing for trial, and the witnesses and the Court from any resultant inconvenience.

34. By his guilty plea, Damon Rallis has demonstrated an acceptance of responsibility for his transgressions by truthfully answering the Court's questions during the allocution and admitting to the conduct which forms the basis of the offense for which he stands convicted. By this act of contrition alone, Defendant qualifies for a three-level adjustment for acceptance of responsibility under the Sentencing Guidelines.

35. Putting the act of pleading guilty aside, Damon Rallis has expressed remorse for his actions and the direction his life has taken. He has fully recognized that it was his poor choices that led him to the position that he is in now, and regrets having chosen this path. The defense relies upon Defendant statement to this Court as evidence of the same, and asks this Court to take this into account.

7

*B. The Character and Personality Traits of the Defendant Indicate that He is Unlikely to Reoffend and Commit Future Crimes, or that He is a Danger to the Community*

36. Damon Rallis' family situation, the respect he commands from friends and family members, and his position in his community make it unlikely that he will commit another offense in the future. Damon Rallis is well-liked and respected by numerous friends and family members, as evidenced by the attached letters of recommendation, collectively appended hereto.

37. Some of the pertinent highlights are set forth below:

> From time to time, over the course of the last four years, I have met with Damon in person and over the phone. It is apparent to me that his psychological counseling, his involvement in a 12-step program (as a member and now a leader), and the deep self-examination process he has undergone, have resulting in a transformation that few people have the commitment, or opportunity, to undertake. The years that Damon has spent in "home custody" have provided a near-perfect environment for his urgently needed spiritual transformation to take place. Damon had the time he required to reflect on his desires and actions and to make amends. The fact that he could engage in this process in the company of a supportive spouse was, and I think he realizes, a privilege beyond measure.

(**Exhibit B**, letter of Rev. Roger Joslin)

> Over the past few years, Damon has exhibited a remarkable commitment to personal growth and positive change. One of the most significant transformations in Damon's life has been his acknowledgment of past wrongdoings. He has faced these issues head-on, taking ownership of his actions and demonstrating a sincere dedication to making amends. His journey toward redemption has been marked by resilience, self-reflection, and an unwavering commitment to a better future.

(**Exhibit C,** p. 2, letter of Zakaria Haque)

I have always found Damon an honest, diligent, and dependable person since we met in college. When he called me to share the news, I was very shocked due to these actions being uncharacteristic behavior of Damon. These actions are unlike the Damon that I know, and I am confident he will never do this again given how serious I believe he has taken this as. Addressing his addictions to marijuana, porn and his own mental health are important steps to his recovery. Before his arrest, Damon was a proud community volunteer and had a great passion for local politics and his community. He is aware that his actions brought him to this place and has made positive plans for his future. He has always been a great writer. His psychologist recommended that he work towards getting a masters in social work. His support groups have seen his dedication to help other with their addiction and similar situations. Through this new degree, new doors will open to give back to the community.

(**Exhibit C**, p. 12, letter of Jared Rehberg)

38.  As detailed passim, the defense relies upon the testaments to Damon Rallis's character and the relationships he has had with his family.  Further, for the reasons set forth below, there is little chance Damon Rallis will re-offend in the future.

39. Particularly relevant to this Court's sentencing analysis are the following applicable highlights from The Effects of Aging on Recidivism Among Federal Offenders (United States Sentencing Commission Report December 2017)

a. Older offenders are substantially less likely than younger offenders to recidivate following release.

b. Age and criminal history exerted a strong influence on recidivism. For offenders in Criminal History Category I (those with minimal or no prior criminal history), the rearrest rate for males in the 55-59 age group is 22.2%. The reconviction rate for the same age group is even lower - 12.2%

c. Education level influences recidivism. College graduates have a lower rearrest rate than offenders who have not completed high school, regardless of age.

d. Older offenders are less likely to recidivate after release than younger offenders who have served similar sentences, regardless of the length of sentence imposed.

e. At every age group, Federal offenders have a substantially lower recidivism rate than state offenders.

f. Offenders in the lowest base offense level group have a modestly higher recidivism rate across most age categories than those with higher base offense levels.    This is counterintuitive: it means that the less significant a person's offense, the more likely he is to reoffend.

(**Exhibit D,** p. 25)

40. According to the more recent study conducted by the United States Sentencing Commission in 2021, the picture is even more optimistic:

The overall recidivism rate of the 1,093 non-production child pornography offenders was 27.6 percent (302 of 1,093 offenders) three years after release from incarceration (or the commencement of probation). Of the 1,093 offenders, 16.0 percent were arrested for a crime that was not a sex offense or related to the offender's status as a sex offender (depicted as "general recidivism" in Figure 31).

The sexual recidivism rate for all nonproduction child pornography offenders was 4.3 percent (47 of the 1,093 offenders). An additional 7.3 percent of offenders were arrested or had their term of supervised release revoked for failing to register as a sex offender.

(**Exhibit E, p. 65**)

41.  In sum, due to Defendant's age and the other mitigating factors, he is highly unlikely to re-offend in the future according to the statistics.

42.  This Court should consider the aberrant behavior departure under § 5K2.20 of the Sentencing Guidelines. Under Second Circuit law, a defendant's crimes need not have been committed "spontaneous[ly] and seemingly thoughtless[ly]." United States v. Gonzalez, 281 F.3d 38, 47 (2d Cir. 2002). It would suffice if they were a "single criminal occurrence or single criminal transaction," were committed "without significant planning," were of a "limited duration," and constituted "a marked deviation from an otherwise law-abiding life." United States v. Castellanos, 355 F.3d 56, 58 (2d Cir. 2003) (citing U.S.S.G. § 5K2.20). And under the Guidelines Application Notes, the sentencing court can consider the following characteristics of a defendant: "(A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense."  Guideline § 5K2.20, n. 3.

43. As demonstrated above, various factors militate in favor of a finding that this was aberrant behavior.

44. Thus, the circumstances that gave rise to the instant offense are extremely unlikely to recur.

### B. The Defendant is Likely to Respond Affirmatively to Future Supervision

45. If prior performance is any indication of future success, then it should be clear that Damon Rallis is prime candidate for a minimum term of imprisonment and Supervised Release.   By the time sentencing occurs, Damon Rallis will have been subject to supervision by this Court for over 48 months.  In that time, he has faithfully honored all obligations imposed upon him by the Court and Probation. He has sought professional help to address his mental health issues and substance abuse issues.   He has responded affirmatively to that treatment.  Damon Rallis has also utilized the services of his local church and taken a faith-based approach to rehabilitation.  As noted above, he also has a higher motivation to avoid a violation of supervision and the resultant prison sentence for the benefit of his wife and children.

46. As a result, he is highly likely to respond affirmatively to supervision.

### C. Lack of Criminal Record

47.  This case represents Damon Rallis' first and only contact with the criminal justice system.  This is a factor that this Court should consider in mitigation – that for the majority of his life, he studied, maintained gainful employment, worked in a volunteer capacity, and committed no crimes as a member of society.

### D. The Need to Avoid Sentencing Disparity

48.  The Policy Statement of the United States Sentencing Guidelines states that the reason that the Guidelines exist is to eliminate, as much as possible, the "the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."  This principle is codified at 18 U.S.C. § 3553(a)(6).  See United States v. Savin, 349 F.3d 27, 34 (2d Cir. 2003), United States v. Hayes, 762 F.3d 1300 (11th Cir. 2014), Chapman v. United States, 500 U.S. 453 (1991) (Stevens, J, dissenting), Blakely v. Washington, 542 U.S. 296 (2004).

49.  According to a 2021 study published by the United States Sentencing Commission, the median sentence length of non-production child pornography offenses was 60 months nationwide.  (**Exhibit E**, p. 66).  Thus, a sentence in excess of 60 months would be outside the median range nationwide and would result in sentencing disparity.

*E. Significant Incarceration or Imprisonment Would Entail*
*Excessive Hardship to the Defendant and His Family*

50. Any absence from the home will have a serious negative impact upon Defendant's wife and children. Since losing his job, Defendant has struggled financially. His absence will create a void in the lives of his family who will be deprived of his company, guidance and support. Even the little money he is currently earning helps support the household; the resultant loss of his ability to earn anything will certainly pose a hardship.

## IV. LACK OF AGGRAVATING FACTORS

51. The defense respectfully submits that there are no significant aggravating factors for this Court to consider. Assuming arguendo that there are aggravating factors, they are substantially outweighed by the mitigating factors set forth herein. However, several aggravating factors are listed below to illustrate the lack thereof. There is little to no risk of recidivism; there is nothing that indicates Defendant committed the offense for pecuniary gain; there is nothing to indicate that Defendant was a participant in organized criminal activity; nor is there anything to indicate that Defendant's conduct was likely to escalate beyond fantasy.

## V. CONCLUSION

52. Based upon all of the information that this Court has at its disposal, any of the alternative sentences proposed above are more than sufficient to fit the crime. As such, the defense respectfully requests that this Court sentence Damon Rallis as follows:

(A) Impose a sentence that is a variance from the applicable Guideline range and impose the minimum custodial sentence permissible by statute; or in the alternative,

(B) Downwardly depart from applicable Guideline range and impose a minimal custodial sentence;

(C) impose no fine or financial penalty at sentence, due to Defendant's inability to pay such a fine;

(D) direct the Attorney General to place the Defendant in a within the Bureau of Prisons at a location as geographically close as possible to Suffolk County, New York to permit the Defendant's family and friends to visit him without undue burden or hardship;

(E) grant such other and further relief that this Court may deem just and proper.

Dated:  March 6, 2025
`
                                                    Respectfully Submitted,

                                                    */s/ Jason L. Russo, Esq.*
                                                    JASON L. RUSSO, ESQ.

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on March 6, 2025 upon AUSA Paul G. Scotti via CM/ECF

                                                    */s/ Jason L. Russo, Esq.*
                                                    JASON L. RUSSO, ESQ.